

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable E. P. Jennings
County Auditor
Hardin County
Kountze, Texas

Dear Sir:

Opinion No. O-886

Re: Oil that is in a pipe line
and working tanks only temporarily,
while being moved across a county,
is only subject to ad valorem
taxes in the county of the owner's
domicile.

This is in answer to your letter requesting an opinion as follows:

"Several of the pipe line companies and oil companies operating in this county failed to render any oil in storage on January 1st. One Company had the following paragraph in a letter to the County:

"'Due to the increased number of grades of oil which _____ Company has been forced to handle and keep separate, it has become necessary for all of our tanks at _____ to be used as working tanks, and for that reason we are no longer storing any oil at _____. You will notice that all of the tanks are now on the pipe line company's rendition. Under this arrangement it is considered that all of the oil we might have had in these tanks on January 1st was in transit and not in storage and therefore not subject to taxation at that point.'

"This oil in question varies as to amount, but a large portion is constantly on hand, and if it isn't an interstate commerce, it appears that it should be taxable as of January 1st.

"We should appreciate an opinion from you regarding whether or not we might tax the oil which was referred to in the quoted paragraph above."

Your letter does not make the status of this oil entirely clear, but we assume that all of the oil in question was "in transit," coming from outside of Hardin County, and the same oil only remained in the tanks temporarily (including January 1st) and then moved on in the pipe line, leaving the county.

We also assume that you are referring to ad valorem taxes; and that your question has arisen due to the fact that the tanks and lines in question are located in Hardin County, but that the pipe line company which owns the oil in these tanks and lines has its domicile and principal place of business in another county.

The constitutional and statutory provisions that deal with this question are Article VIII, Section 11, Constitution of Texas, and Article 7153, Revised Civil Statutes of Texas, Art. VIII, Sec. 11, of the Constitution, reads in part as follows:

"All property, whether owned by persons or corporations shall be assessed for taxation, and the taxes paid in the county where situated, but the Legislature may, by a two-thirds vote, authorize the payment of taxes of non-residents of counties to be made at the office of the Comptroller of Public Accounts. . ."

Article 7153, Revised Civil Statutes, reads as follows:

"All property, real and personal, except such as is required to be listed and assessed otherwise, shall be listed and assessed in the county where it is situated; and all personal property, subject to taxation and temporarily removed from the State or county, shall be listed and assessed in the county of the residence of the owner thereof, or in the county where the principal office of such owner is situated."

The Supreme Court of Texas, while considering the effect of this constitutional provision, in the case of Great Southern Life Ins. Co. v. City of Austin, 112 Tex. 1, 243 S. W. 778, 26 R.C.L. 273, speaking through Chief Justice Cureton, said:

"Our Constitution, therefore, in declaring that property shall be taxed where situated, has done no more than declare the common-law rule. The purpose of the Constitution in declaring that property should be taxed in the county where situated, was merely to define the general jurisdictional unit for the exercise of the taxing power, and to confine the exercise of that power to the subjects of taxation within that unit. It did not

define what was meant by the words 'where situated.' Since it had reference to the taxing power, it evidently meant property where situated for the purposes of taxation under the general principles of law as then understood. County Treasurer v. Webb & Garrison, 11 Minn. 500 (Gil. 376); San Francisco v. Lux, 64 Cal. 481, 2 Pac. 254; San Francisco v. Mackey (C.C.) 22 Fed. 602, 607.

"Under the common law, 'mobilia sequuntur personam' was a well established maxim, and personal property of every description was taxable only at the domicile of its owner, regardless of its actual location. This is still the basic principle upon which the taxation of personal property rests. 26 R.C.L. § 241, pp. 273, 274. But even prior to the Revolution the principle had been abrogated to the extent that, as between different towns and taxing districts, certain classes of tangible personal property had a taxable situs where employed in business, regardless of the domicile of its owner. 26 R. C.L. § 244, pp. 276, 277; Pullman's Palace Car Co. v. Pennsylvania, 141 U. S. 18, 11 Sup. Ct. 876, 35 L. Ed. 613; State Board of Assessors v. Comptoir National D'Escompte, 191 U. S. 388, 24 Sup. Ct. 109, 48 L. Ed. 232."

Under this rule of law the oil in question, being personal property, is not subject to ad valorem taxes in Hardin County unless it has acquired a taxable situs there.

In the case of Court v. O'Connor, 65 Tex. 334, which arose before a law concerning the taxing of cattle in county-line pastures went into effect, the Supreme Court of Texas held that cattle that ranged in a pasture lying partly in Refugio County and partly in Aransas County were only taxable in the county of the owner's residence, Refugio County.

In the case of North American Dredging Co. v. State, (Ct. Civ. App., Galveston) 201 S. W. 1065, in discussing the right of a county to tax a dredge-boat, the court said:

"It is . . . well settled by the decisions of the Supreme Court of the United States that as a general rule a vessel plying between ports of different states engaged in coastwide trade has its situs for taxation at the domicile of the owner, unless such vessel has acquired an actual situs in a state other than that of its owner's domicile."

In the case of City of Fort Worth v. Southland Greyhound Lines, Inc., 67 S. W. (2d) 354, the Court of Civil Appeals at Fort Worth held that the City of Fort Worth could not tax buses owned by a corporation whose domicile was in San Antonio, Texas, even though the buses were stationed in Fort Worth part of the time; and that opinion was approved by the Supreme Court of Texas in the case of City of Fort Worth v. Southland Greyhound Lines, Inc., 123 Tex. 13, 67 S. W. (2d) 361.

In the case of G.C. & S.F. Ry. Co. v. City of Dallas, 16 S. W. (2d) 292, which involved the right of a city to tax railroad switch engines, and which was decided on the basis of a constitutional provision dealing with the taxing situs of railroad property, the Commission of Appeals made a statement in the opinion as follows:

"In the absence of a statute defining the taxable situs of this property otherwise, it was only taxable at the domicile of the railway company."

In view of these authorities, we can only reach the conclusion that the oil in question has not acquired a taxable situs in Hardin County. It is not put to any use while there, and the tanks and pipe lines in which it is contained are only links in the transportation system used to convey it across the county.

We have been unable to find any Texas appellate court cases on this question that involve oil; and we have been able to find only one such out-of-state authority, and that is the case of Cumberland Pipe Line Co. v. Commonwealth, 258 Ky. 90, 79 S. W. (2d) 366, by the Court of Appeals of Kentucky, which directly supports the conclusion we have reached here. We take the liberty to quote at length from that case as follows:

"The Cumberland Pipe Line Company, by its charter and the statutes (section 3766b-1b, Ky.St.), is a common carrier engaged in the transportation of oil. It has in this state approximately 200 miles of main line and 200 miles of parallel or double line. In connection with the lines of pipe are numerous tanks for gathering oil at the wells, thence to be carried into larger tanks from which it goes into transmission. During the time involved the company served five oil fields with about 6,000 wells, and its lines passed through fourteen counties of the state and many lesser taxing districts.

Close to 17,000,000 barrels of oil were handled by this company during the six years. The flow or transportation was altogether toward the east and northeast from Estill county. By far the greater part of the oil was received from wells along the line east of that county, and it was as a matter of fact never in that county. But the company had at Fitchburg, Estill county, five large tanks with an aggregate capacity of 195,000 barrels, into which it had run oil from wells in Estill and Jackson counties south and west of the tanks. . .

"It was the contention of the Pipe Line Company, and its voluminous proof tends to show, that the oil in the Fitchburg tanks accumulated through congestion in traffic and an inability of its patrons to take care of the production at destination, and expressly an inability or failure of connecting carriers upon which this company was dependent in many cases for delivery to the consignees. The fields served during the period produced large quantities which the company was bound to accept to the extent of its facilities. It endeavored strenuously to effect deliveries. These tanks were merely depots or stations holding the oil until it could be moved or delivered, and it is maintained that the contents were constructively in actual transportation. . .

"According to the proof, all the oil involved was delivered for immediate shipment and the company was delivering it as demanded. There was continuity of intake and outlet. . .

"Until 1906, under the ancient doctrine of mobilia sequuntur personam all tangible personal property in this state was taxed at the domicile of the owner regardless of its physical location . . . the General Assembly of 1906 (laws 1906, c. 22 art 1, § 7) enacted section 4025, Ky. St., which is in part as follows: 'Tangible personal property shall be listed and taxes paid thereon in the county, municipality and taxing district where the same has established a taxable situs based on the actual situation of the property.' . . .

"From the beginning that act has been consistently construed to mean an 'actual situation' that is not temporary, otherwise it would lead to absurd and inequitable consequences. If property on the assessing day is but temporarily situated elsewhere

than at the domicile of the owner, it is not taxable at that temporary situs. If it have no other permanent place, then it is regarded as having a taxable situs at the domicile of the owner. If it is transient, so much the more. Of course, the facts of each case control.

"We are of the opinion, therefore, that the oil sought to be subjected was assessable only at the domiciles of the owners."

Our answer to your question is that a county cannot collect ad valorem taxes on oil in a pipe line and working tanks that has come from outside the county and remained in the line and tanks only temporarily (including January 1st) and then moved on in the pipe line and left the county, if this oil is owned by a person or corporation whose domicile is in another county.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By  Cecil C. Rotsch
        Assistant

CCR:N

APPROVED JUN 22, 1939

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY_____
CHAIRMAN